# EXHIBIT F

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

NORMAN WILLIAMS and DIANE HOWE,   )
Individually and as legal      )
representatives of J.H.,          )
                              )
           Plaintiffs,      )
                              ) Civil Action No. 12-436(EGS)
       v.                )
                              )
ROMARM and DOES COMPANY     )
DISTRIBUTOR,                  )
                              )
           Defendants.     )
_____)

## ORDER

For the reasons stated in the accompanying Memorandum Opinion filed on this day, it is hereby

**ORDERED** that defendant's Motion to Dismiss is **GRANTED**; and it is

**FURTHER ORDERED** that plaintiffs' Motion for Jurisdictional Discovery is **DENIED**; and it is

**FURTHER ORDERED** that defendant's Cross-Motion for a Protective Order is **DENIED** as moot.

**SO ORDERED.**

**Signed:**   **Emmet G. Sullivan**
          **United States District Judge**
          **February 4, 2013**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| NORMAN WILLIAMS and DIANE HOWE,<br>Individually and as legal<br>representatives of J.H.,<br><br>Plaintiffs,<br><br>v.<br><br>ROMARM and DOES COMPANY<br>DISTRIBUTOR,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. 12-436(EGS)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### MEMORANDUM OPINION

This matter is before the Court on defendant ROMARM, S.A.'s Motion to Dismiss, plaintiffs' Motion for Jurisdictional Discovery, and defendant ROMARM's Motion for a Protective Order. For the reasons explained below, defendant's Motion to Dismiss is **GRANTED**, the Motion for Jurisdictional Discovery is **DENIED**, and the Motion for a Protective Order is **DENIED** as moot.

### I.   BACKGROUND

Plaintiffs Norman Williams and Diane Howe bring this wrongful death action on behalf of their son, J.H., who was killed in the District of Columbia as a result of gunfire. Compl. ¶ 1-2.  The firearm used to kill J.H. was allegedly manufactured by ROMARM, S.A. ("ROMARM" or "defendant"), a Romanian firearm manufacturer.  *Id.* ¶ 2.  Plaintiffs also bring claims against the alleged distributor of the firearm, "Does

Company Distributor," who has not been identified and has not appeared in the case.  Plaintiffs allege that personal jurisdiction over ROMARM is appropriate under the District of Columbia's long-arm statute, D.C. Code Section 13-423(a)(3), because "the acts of the defendants caused tortious injury and death . . . when one of [ROMARM's] assault weapons" was used to kill J.H.  Compl. ¶ 2.  Plaintiffs further allege that subject matter jurisdiction exists pursuant to the "commercial activity" exception of the Foreign Sovereign Immunity Act, 28 U.S.C. § 1605(a)(2), based on the commercial conduct of ROMARM, which is a corporation owned by the government of Romania.  Plaintiffs bring claims under the District of Columbia's wrongful death statute, D.C. Code Section 16-2701, the Survival Act, D.C. Code Section 12-101, and the Assault Weapons Manufacturing Strict Liability Act of 1990, D.C. Code Sections 7.2551.01(1)(A) and 7-2551.02.  Compl. ¶ 3.  Plaintiffs allege that defendants "were grossly negligent by allowing [ROMARM's] assault weapon to be transported to the District where all such weapons are prohibited and denied licensure."  Compl. ¶ 4.  Plaintiffs further allege that ROMARM and its distributors "could reasonably anticipate that by engaging in the sale and transportation of dangerous weapons overseas that these weapons may land in the hands of criminals who may use the weapons for

2

what they were intended for, that is to kill and maim innocent human beings." Compl. ¶ 7.

On May 14, 2012, ROMARM filed a motion to dismiss plaintiffs' complaint. ECF No. 6. Defendant argued that the complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction and Rule 12(b)(1) for lack of subject matter jurisdiction. Defendant also argued that the complaint should be dismissed under Rule 12(b)(6) for failure to state a claim. With respect to personal jurisdiction, ROMARM argued that this Court lacks both specific and general jurisdiction over ROMARM, a Romanian company with no ties to the District of Columbia, and that the exercise of personal jurisdiction over ROMARM would violate due process. ROMARM further argues that subject matter jurisdiction is absent because ROMARM does not carry on any "commercial activity" in the United States that would subject ROMARM to the relevant exception to the Foreign Sovereign Immunities Act ("FSIA"). With respect to plaintiffs' 12(b)(6) argument, defendant argues that plaintiffs' claims are barred by the applicable statute of limitations.

In response to defendant's motion, plaintiffs filed a motion requesting jurisdictional discovery as to personal and

subject matter jurisdiction.  ECF No. 10.[1]  Plaintiffs argue that

they are entitled to discovery regarding "the penetration of the

defendant ROMARM, and its armament into the United States

market" and "what [ROMARM] knows about the theft of its weapons

here."  Pl.'s Mot. for Discovery, ECF No. 10, at 2-3.

   In response to plaintiffs' motion for discovery, defendant

notes that the discovery was served by plaintiffs in

contravention of Rule 26(d)(1) because the parties had not

conferred as required by Rule 26(f) and the plaintiffs had not

obtained a court order permitting such discovery.  Defendant

also argues that plaintiffs have not alleged sufficient facts in

their complaint to warrant jurisdictional discovery because the

allegations, even if proven, do not satisfy the requirements for

asserting personal jurisdiction over defendant.  ECF No. 13 at

1-2.  Similarly, defendant argues that plaintiffs have failed to

allege any facts regarding subject matter jurisdiction that

would justify jurisdictional discovery.  Finally, defendant

argues that the discovery should be denied as futile because the

claims are barred by the applicable statute of limitations.  In

connection with its opposition, defendant filed a cross-motion

---

[1] This document is titled "Plaintiffs' Motion for an Extension of
Time in Which to Oppose Defendants' Amended Motion to Dismiss
Plaintiffs' Complaint."  The motion is more accurately
described, however, as a motion for jurisdictional discovery
because plaintiffs set forth what they believe to be their
entitlement to jurisdictional discovery.

for a protective order.  ECF No. 12.  In that motion, defendant asks the Court to vacate certain premature discovery requests served on defendant by plaintiff.  Notably, the discovery requests do not seek any information specific to the District of Columbia.

In a confusing and somewhat disjointed brief, plaintiffs submitted a reply in support of their motion for jurisdictional discovery and in opposition to defendant's motion for a protective order.  ECF No. 14.  Plaintiffs appear to argue that discovery is warranted as to personal jurisdiction to establish the "proliferation of ROMARM's assault weapons in the U.S. market, and illegally into the District of Columbia."  *Id.* at 3. Specifically, plaintiffs appear to seek discovery regarding a distributorship agreement between ROMARM and alleged distributor named Century Arms/International.  *Id.* at 3.  Plaintiffs also allege that under the FSIA, a plaintiff need only establish that subject matter jurisdiction exists and that personal jurisdiction is assumed.  With respect to subject matter jurisdiction, plaintiffs reply that discovery is warranted to establish ROMARM's "awareness that its weapons are destined for the U.S. market and that proper safeguards are lacking there." *Id.* at 6.  Plaintiffs also dispute defendant's argument regarding the statute of limitations.

In its reply in further support of its cross-motion for a protective order, defendant argues that plaintiffs misapprehend the applicable law as to personal jurisdiction under the FSIA. In particular, defendant argues that a party must separately establish personal jurisdiction in addition to subject matter jurisdiction under the FSIA.  In a surreply, plaintiffs also repeat their prior arguments regarding ROMARM's knowledge of the illegal distribution of its weapons in the United States.[2]

On January 7, 2013, the Court directed plaintiffs to respond to defendant's motion to dismiss and directed defendant to file a reply.  The Court also directed the parties to address the recent decision of *GSS Group Ltd. v. National Port Authority*, 680 F.3d 805 (D.C. Cir. 2012).  In their opposition, plaintiffs dispute defendant's claim of sovereign immunity, contending that defendant's actions qualify as "commercial activity."  Plaintiffs also argue that personal jurisdiction is proper because defendant's "nationwide distribution scheme . . . [renders it] answerable through the country, wherever its dangerous weapons are found."  Pls.' Opp. to Mot. to Dismiss,

---

[2] The Court notes that plaintiffs filed two surreplies without seeking leave of Court.  *See United States ex rel. Pogue v. Diabetes Treatment Ctrs. Of Am., Inc.*, 238 F. Supp. 2d 270, 276 (D.D.C. 2002) ("A surreply may be filed only by leave of Court, and only to address new matters raised in a reply, to which a party would otherwise be unable to respond.").  Nonetheless, the Court has reviewed plaintiffs' surreplies and has found that the arguments contained therein do not materially advance plaintiffs' arguments against dismissal.

ECF No. 19, at 1-2.  In its reply, defendant argues, *inter alia*,
that plaintiffs have failed to establish that the exercise of
personal jurisdiction over ROMARM, a state-owned corporation,
would not violate due process.  Def.'s Reply at 5.

The motion to dismiss is now ripe for the Court's decision.

## II.  DISCUSSION

### A. Personal Jurisdiction in FSIA Cases

Under the Foreign Sovereign Immunities Act ["FSIA"],
district courts have subject matter jurisdiction over "any
nonjury civil action against a foreign state . . . as to any
claim for relief in personam with respect to which the foreign
state is not entitled to immunity."  28 U.S.C. § 1330(a).  The
Act defines the term "foreign state" expansively.  It includes
not only foreign sovereigns, but also any "political subdivision
of a foreign state or instrumentality of a foreign state."  *Id.*
§ 1603(a).  The term "agency or instrumentality of a foreign
state" covers any foreign corporation "a majority of whose
shares . . . [are] owned by a foreign state.  *Id.* § 1603(b).
The parties agree that ROMARM is an "agency or instrumentality
of a foreign state" under Section 1603(b).  Pls.' Opp. to Def.'s
Mot. to Dismiss at 1.

With respect to personal jurisdiction, the FSIA specifies
that "[p]ersonal jurisdiction over a foreign state shall exist
as to every claim for relief over which the district courts have

[subject-matter] jurisdiction under" § 1603(a) "where service has been made under" § 1608.[3]  In other words, under FSIA, subject-matter jurisdiction plus service of process typically equals personal jurisdiction.  *GSS Group Ltd. v. Nat'l Port Auth.*, 680 F.3d 805, 811 (D.C. Cir. 2012) (citing *Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 95 (D.C. Cir. 2002)).  A significant exception has been recognized, however, where a state-owned corporation is an independent legal entity from its owner.  *See id.* at 816-17.  In that scenario, a United States court may not exercise personal jurisdiction over a foreign corporation unless the corporation has "minimum contacts" with the relevant forum.  *See id.*

The exception has been set forth in a line of cases that is binding precedent on this Court.  In *TMR Energy Group v. State Property Fund of Ukraine*, this Circuit recognized that "government instrumentalities established as separate juridical entities distinct and independent from their sovereign should normally be treated as such" for the purposes of a Fifth Amendment analysis.  411 F.3d 296, 301 (D.C. Cir. 2005) (citing *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 626-27 (1983) ("*Bancec*")).  In that case, a Ukranian state property fund argued that it was entitled to due process protection and was not subject to personal jurisdiction

---

[3] Defendant does not contest that service was properly made.

in the United States.  The district court disagreed, and the
Circuit affirmed, finding that the State of Ukraine had plenary
control over the fund.  The Circuit held that a presumption of
independent status, detailed by the Supreme Court in *Bancec*,
exists between a state-owned entity and the foreign entity that
owns it.  *Id.* (citing *Foremost-McKesson v. Islamic Republic of
Iran*, 905 F.2d 438 (1990)).  The Court found, however, that the
presumption had been overcome.  Specifically, the record
reflected that the fund was created to implement national
policies, its leaders were appointed by the government, and it
was accountable to the government.  *Id.* at 301-02.  The court
noted that the fund was barely distinguishable from an executive
department of the government and held that it should not be
treated as an independent juridical entity.  *Id.* at 302.

In *GSS Group*, the Circuit affirmed a ruling granting a
motion to dismiss under the FSIA for lack of personal
jurisdiction.  680 F.3d at 809-10.  In that case, the district
court found that the National Port Authority, an entity owned by
the Liberian government, was subject to statutory personal
jurisdiction under the FSIA.  The court found, however, that
plaintiffs had failed to establish Constitutional personal
jurisdiction over the entity as required by *TMR Energy* and
*Bancec*.  *Id.* at 810.  The district court held that National Port
Authority, though owned by a foreign state, should be afforded

the protection of the due process clause.  *Id.*  Relying on
precedent, the court noted that "the extent of a state-owned
corporation's juridical independence plays a dispositive role in
the constitutional analysis."  *Id.* at 815 (citing *TMR Energy
Ltd.*, 411 F.3d at 301).  "[I]f an instrumentality does not act
as an agent of the state, and separate treatment would not
result in manifest injustice, the instrumentality will enjoy all
the due process protections available to private corporations."
*Id.* (citing *First Nat'l City Bank v. Banco Para El Comercio
Exterior de Cuba*, 462 U.S. 611, 629 (1983)).  The court cited
prior cases that left "the unmistakable impression that United
States courts may not exercise personal jurisdiction over a
foreign corporation unless the corporation has 'minimum
contacts' with the relevant forum."  *Id.* at 817.  The court
found that plaintiff had failed to rebut the presumption of
independent status, set forth in *TMR Energy*, between a state-
owned entity and its state, because plaintiff had failed to
contest defendant's characterization of itself as an independent
juridical entity.  Accordingly, the court affirmed the district
court's ruling that defendant was entitled to due process
protection.  *Id.*

     In this case, unlike in *GSS Group Ltd.*, plaintiffs have not
wholly failed to contest defendant's assertion of independent
status, but their arguments are not very strong.  Plaintiffs

argue that a foreign corporation that is state-owned under the
FSIA is automatically subject to personal jurisdiction in this
Court.  *See* Pls.' Opp. to Def.'s Mot. to Dismiss at 8.  That is
simply not the law in this Circuit.  *See GSS Group Ltd.*, 680
F.3d at 817.  In *GSS Group Ltd.*, the defendant entity was state-
owned and was subject to statutory personal jurisdiction under
the FSIA.  Nonetheless, because the entity was a foreign
corporation, it benefitted from a presumption of independent
status.  The plaintiff failed to rebut that presumption, and the
Circuit affirmed the district court's ruling that minimum
contacts with the forum were thus required.  680 F.3d at 817.
Accordingly, plaintiffs cannot simply argue as they have that
ROMARM has waived the ability to contest personal jurisdiction.

Moreover, the Court finds that ROMARM is entitled to the
presumption of independent status because ROMARM has
consistently represented that it is a separate entity from the
State of Romania, even though it may be state-owned.  *See, e.g.*,
Reply to Mot. to Dismiss at 6 (ROMARM is a "foreign corporation
that is wholly owned by Romania"); Crisan Aff. ¶ 6 (ROMARM is
"wholly state-owned and operat[ing] under the authority of
Romanian Ministry of Economy, Commerce and the Business
Environment").  Under *GSS Group Ltd.* and *TMR Energy*, ROMARM's
representations create a presumption of independent status.
Plaintiffs' responses, however, do not seriously call into

question or rebut the presumption that ROMARM is a separate juridical entity from the State of Romania.  For example, plaintiffs appear to assert that the burden is on ROMARM when they argue that "[w]hether or not [ROMARM] is controlled by the country of Romania is an issue left for defendants to explain to the court."  Pls.' Opp. to Def.'s Mot. to Dismiss at 1. Plaintiffs also allege that ROMARM's state ownership "suggests" that ROMARM "may" be acting as an agent or partner of the Romanian government.  *Id.* at 4.  These statements do not raise any significant questions regarding whether ROMARM is a distinct legal entity, and the Court finds that plaintiffs have failed to rebut the presumption of independent status between ROMARM and Romania.  Accordingly, the Court finds that "minimum contacts" must be established between ROMARM and this forum in order to justify the Court's exercise of personal jurisdiction over ROMARM.  *See GSS Group Ltd.*, 680 F.3d at 817.

**B. Personal Jurisdiction / Due Process Analysis**

Under Federal Rule of Civil Procedure 12(b)(2), a plaintiff bears the burden of establishing a factual basis for personal jurisdiction over the defendant(s).  *See Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990).  As such, plaintiffs must allege specific acts connecting the defendant(s) with the forum.  *See Second Amendment Found v. U.S. Conf. of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001).

Plaintiffs must plead facts sufficient to establish this Court's personal jurisdiction over a defendant in one of two forms: "general or all-purpose jurisdiction, and specific or case-linked jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, -- U.S. ----, 131 S. Ct. 2846, 2851 (2011). To establish general jurisdiction over an out-of-state defendant, a plaintiff must show that the defendant's "contacts with the forum are 'continuous and systematic,' . . . such that due process is not offended by allowing a United States court to hale the defendant into the forum 'over any matter involving the defendant.'" *Allen v. Russian Fed'n*, 522 F. Supp. 2d 167, 192-93 (D.D.C. 2007) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984); *Doe I v. State of Israel*, 400 F. Supp. 2d 86, 108 (D.D.C. 2005)); *see S.K. Innovation, Inc. v. Finpol*, 854 F. Supp. 2d 99, 118 (D.D.C. 2012). Where a court "seeks to assert specific jurisdiction over an out-of state defendant who has not consented to suit there, this 'fair warning' requirement is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum, . . . and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Miwani v. bin Laden*, 417 F.3d 1, 12 (D.C. Cir. 2005) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984); *Helicopteros*, 466 U.S. at 414). Where a party seeks

13

to assert personal jurisdiction on a "stream of commerce"
theory, the party must establish that the defendant "could be
said to have targeted the forum; as a general rule, it is not
enough that the defendant might have predicted that its goods
will reach the forum State." *J. McIntyre Machinery, Ltd. v.
Nicastro*, -- U.S. ----, 131 S. Ct. 2780, 2788 (2011) (plurality
opinion). Personal jurisdiction does not exist when the sole
basis is that a manufacturer "knows or reasonably should know
that its products are distributed through a nationwide
distribution system that might lead to those products being sold
in any of the fifty states." *Id.* at 2785. There are no
"mechanical tests" or "talismanic formulas" used by courts to
determine whether the assertion of personal jurisdiction is
appropriate in a particular case. *Shoppers Food Warehouse v.
Moreno,* 746 A.2d 320, 329 (D.C. 2000). Nevertheless, courts
must examine whether "the quality and nature of the nonresident
defendant's contacts with the District . . . are voluntary and
deliberate or only random, fortuitous, tenuous and accidental,"
whether the defendant "has purposefully availed itself of the
benefits and protections of the district in engaging in a
business activity in the forum jurisdiction," and whether "it is
fair and reasonable to expect it to anticipate being sued in
that jurisdiction." *Armenian Genocide Museum and Memorial, Inc.
v. Cafesjian Family Foundation*, Inc., 607 F.Supp.2d 185,

14

189 (D.D.C. 2009) (quoting *Shoppers Food Warehouse*, 746 A.2d at
329).

Nowhere in the complaint or in any of the briefing does
plaintiff suggest that the ROMARM has "continuous and
systematic" contacts with the District of Columbia that would
subject it to the general jurisdiction of this forum.  Indeed,
plaintiffs only allege that specific jurisdiction is
appropriate.

With respect to specific jurisdiction, however, plaintiffs'
arguments also fall short.  Plaintiffs allege that personal
jurisdiction over ROMARM is appropriate under the D.C. long-arm
statute because "the acts of the defendants caused tortious
injury and death . . . when one of [ROMARM's] assault weapons"
was used to kill J.H.  Compl. ¶ 2.[4]  Although not set forth as a

_____

[4] Paragraph (a)(3) of the District of Columbia long-arm statute,
which is the only provision cited by plaintiff in the complaint,
provides that a District of Columbia court may exercise personal
jurisdiction over "a person, who acts directly or by an agent,
as to a claim for relief arising from the person's . . . causing
tortious injury in the District of Columbia by an act or
omission in the District of Columbia . . . ."  This paragraph is
"a precise and intentionally restricted tort section, which
stops short of the outer limits of due process, and which
confers jurisdiction only over a defendant who commits an act in
the District which causes an injury in the District, without
regard to any other contacts."  *Moncrief v. Lexington Herald-
Leader Co.*, 807 F.2d 217, 221 (D.C. Cir. 1986) (citations
omitted).  In view of this Circuit's holding in *GSS Group Ltd.*
that the FSIA requires a foreign corporation's contacts with the
forum state to satisfy due process, however, the Court will
analyze ROMARM's contacts to determine whether they meet the

jurisdictional allegation, plaintiffs further allege that ROMARM and its distributors "could reasonably anticipate that by engaging in the sale and transportation of dangerous weapons overseas that these weapons may land in the hands of criminals who may use the weapons for what they were intended for, that is to kill and maim innocent human beings." Compl. ¶ 7.  This is simply insufficient to establish specific jurisdiction over ROMARM.  There are no allegations that ROMARM directed any activities toward the District of Columbia.  Moreover, the only allegations regarding the District of Columbia involve criminal conduct by others in the transportation of a firearm into the District.  Such facts are far from "purposeful availment" and are more akin to the "random, fortuitous, tenuous and accidental" contacts contemplated by the District of Columbia Court of Appeals in *Shoppers Food Warehouse*.  *See* 746 A.2d at 329.

Plaintiffs also argue that personal jurisdiction is appropriate under the District of Columbia Assault Weapons Manufacturing Strict Liability Act.  Plaintiffs' arguments as to this point confuse personal jurisdiction with liability.  *See* Pls.' Opp. to Mot. to Dismiss at 5 (citing *District of Columbia*

---

broader due process standard, rather than the long-arm standard. *See* 680 F.3d at 811.

*v. Beretta, U.S.A., Corp.*, 872 A.2d 633, 658 (D.C. 2005)).  The
Act states that

> Any manufacturer, importer, or dealer of an assault
> weapon or machine gun shall be held strictly liable in
> tort, without regard to fault or proof of defect, for
> all direct and consequential damages that arise from
> bodily injury or death if the bodily injury or death
> proximately results from the discharge of the assault
> weapon or machine gun in the District of Columbia.

D.C. Code § 7-2551.02.  Though the Strict Liability Act casts

its net broadly, it does not concern the exercise of personal

jurisdiction over a nonresident entity.  Moreover, it does not

purport to obviate the "minimum contacts" required to establish

personal jurisdiction over a defendant, nor could it do so.

Accordingly, the Court finds that plaintiffs have failed to

allege personal jurisdiction over ROMARM.

**C. Request for Discovery as to Personal Jurisdiction Is Denied**

Plaintiffs allege that they are entitled to jurisdictional

discovery on the issues of personal jurisdiction and subject

matter jurisdiction.[5]  This Circuit has held that a plaintiff

"faced with a motion to dismiss for lack of personal

jurisdiction is entitled to reasonable discovery, lest the

defendant defeat the jurisdiction of a federal court by

withholding information on its contacts with the forum."  *El-*

*Fadl v. Central Bank of Jordan*, 75 F.3d 668, 676 (D.C. Cir.

---

[5] As discussed below, the Court does not reach the issue of
subject-matter jurisdiction.

17

1996), *abrogated on other grounds by Samatar v. Yousuf*, 130
S.Ct. 2278 (2010).

Although discovery should be granted freely, it can be
denied when the plaintiff has failed to present facts that could
establish jurisdiction. *See Caribbean Broad. Sys. Ltd. v. Cable
& Wireless, PLC*, 148 F.3d 1080, 1089-90 (D.C. Cir. 1998)
(affirming district court's denial of discovery when plaintiffs
did not present sufficient evidence of jurisdiction); *Savage v.
Bioport, Inc.*, 460 F. Supp. 2d 55, 62-63 (D.D.C. 2006) (denying
jurisdictional discovery where plaintiff did not allege contacts
sufficient to establish general or specific jurisdiction).  In
cases that have allowed discovery, the plaintiff alleged more
than "conclusory" jurisdictional facts. *See El-Fadl*, 75 F.3d at
675 (allowing discovery where plaintiff alleged "specific
transactions").  As the D.C. Circuit has made clear, "in order
to get jurisdictional discovery a plaintiff must have at least a
good faith belief that such discovery will enable it to show
that the court has personal jurisdiction over the defendant."
*Caribbean Broad Sys.*, 148 F.3d at 1090 (citing cases).
Furthermore, when requesting jurisdictional discovery, "a
plaintiff must make a 'detailed showing' of what discovery it
wishes to conduct or what results it thinks such discovery would
produce.'" *Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d

34, 53 (D.D.C. 20003) (quoting *United States v. Phillip Morris Inc.*, 116 F. Supp. 2d 116, 130 (D.D.C. 2000)).

Plaintiffs' requests for discovery fail to meet these standards because plaintiffs have failed to establish a good faith belief that discovery will enable plaintiffs to show that ROMARM has minimum contacts with this forum.  For example, plaintiffs argue that they are entitled to discovery regarding "the penetration of the defendant ROMARM, and its armament into the United States market" and "what [ROMARM] knows about the theft of its weapons here."  Pl.'s Mot. for Discovery, ECF No. 10, at 2-3.  This statement does not make a "detailed showing" of what discovery plaintiffs wish to conduct and what they think the discovery would produce.  Moreover, such an allegation does not relate to any legitimate and purposeful contacts with the District of Columbia.  In their opposition to defendant's motion for a protective order, plaintiffs further assert that discovery would establish the "proliferation of ROMARM's assault weapons in the U.S. market, and illegally into the District of Columbia."  Pls.' Opp. to Def.'s Mot. for a Protective Order, ECF No. 14, at 2.  They argue that discovery would also establish ROMARM's "awareness that its weapons are destined for the U.S. market and that proper safeguards are lacking there." *Id.* at 6.  Even if proven, however, ROMARM's "awareness" of an alleged lack of legal safeguards in the United States regarding

19

the sale of firearms, standing alone, would not result in the
proper exercise of personal jurisdiction over ROMARM in the
District of Columbia.  *See, e.g., J. McIntyre Machinery, Ltd.,* -
- U.S. ----, 131 S. Ct. at 2788 (2011).  Notably, in their
request for discovery, plaintiffs have not set forth a single
request regarding ROMARM's connections to the District of
Columbia.  Rather, plaintiffs seek general and far-reaching
discovery regarding ROMARM's business activities as a whole.
The Court finds, therefore, that plaintiffs have not established
a "good faith belief that [the requested discovery] will enable
[them] to show that the Court has personal jurisdiction" over
ROMARM.  *See Caribbean Broad Sys.,* 148 F.3d at 1090.

### D. The Court Need Not Reach the Issue of Subject Matter Jurisdiction

Customarily, a federal court first resolves doubts about
its jurisdiction over the subject matter, but there are
circumstances in which a district court appropriately accords
priority to a personal jurisdiction inquiry.  *Ruhrgas AG v.
Marathon Oil Co.,* 526 U.S. 574, 578 (1999)  Although defendant
also argues that the Court lacks subject-matter jurisdiction
over this action, the Court has first considered defendant's
argument regarding personal jurisdiction, following the
principle that "there is no unyielding jurisdictional
hierarchy."  *Second Amendment Foundation,* 274 F.3d 521, 523

20

(D.C. Cir. 2001) (quoting *Ruhrgas,* 526 U.S. at 578).  The

Court's conclusion that it lacks personal jurisdiction over

ROMARM moots defendant's argument that the Court also lacks

subject-matter jurisdiction, and the Court need not reach the

latter issue.  *See Roz Trading Ltd. v. Zeromax Group, Inc.*, 517

F. Supp. 2d 377, 382 (D.D.C. 2007); *Ruhrgas AG*, 526 U.S. at 578.

Nor does the Court reach the issue of jurisdictional

discovery as to subject-matter jurisdiction.  This Circuit has

held that where jurisdictional defenses other than subject

matter jurisdiction are raised in FSIA cases, the Court may

decide to address those issues first.  *In re Papandreou*, 139

F.3d 247, 254 (D.C. Cir. 1998), *superseded by statute on other

grounds as recognized in Price*, 294 F.3d 82 (D.C. Cir. 2002)).

In that case, the Circuit held that

> Immunity should reduce the expenses, in time and
> inconvenience, imposed on foreign sovereigns in U.S.
> Courts.  If one (or more) of the other jurisdictional
> defenses hold out the promise of being cheaply
> decisive, and the defendant wants it decided first, it
> may well be best to grapple with it (or them) first.
> It would be bizarre if an assertion of immunity worked
> to increase litigation costs via jurisdictional
> discovery, to the neglect of swifter routes to
> dismissal.

*Id.*  Accordingly, a "district court authorizing discovery to

determine whether immunity bars jurisdiction must proceed with

circumspection, lest the evaluation of the immunity itself

encroach unduly on the benefits the immunity was to ensure."

*Id.* at 253. "In order to avoid burdening a sovereign that proves to be immune from suit, . . . jurisdictional discovery should be carefully controlled and limited; . . . it should not be authorized at all if the defendant raises either a different jurisdictional or 'other non-merits ground[] such as forum non-conveniens [or] personal jurisdiction' the resolution of which would impose a lesser burden on the defendant." *Phoenix Consulting, Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000) (citing *Foremost-McKesson*, 905 F.2d at 449; *see In re Papandreou*, 139 F.3d at 254-55).

Defendant has urged the Court to consider the issue of personal jurisdiction first, arguing that personal jurisdiction disposes of the entire case. For the reasons explained above, the Court agrees. Because the Court finds that the issue of personal jurisdiction is dispositive, the Court declines to reach the issue of subject-matter jurisdiction. The Court also declines to reach the issue of whether jurisdictional discovery is warranted as to subject-matter jurisdiction.

## III. CONCLUSION

For the reasons explained above, the Court finds that it lacks personal jurisdiction over the defendant.[6] Accordingly, defendant's motion to dismiss is **GRANTED**. Plaintiffs' Motion

---

[6] Because the Court finds personal jurisdiction to be dispositive, the Court does not reach any other defense, including statute of limitations, raised by defendant.

for Jurisdictional Discovery is **DENIED**.   Defendant's Motion for

a Protective Order is **DENIED** as moot.   An appropriate order will

accompany this Memorandum Opinion.


Signed:     **Emmet G. Sullivan**
            **United States District Judge**
            **February 4, 2013**