UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

NORMAN WILLIAMS, et al.,
5802 Dade St.
Capitol Heights, MD 20743
a resident of Prince Georges County

as Legal Representative of J.H.,
a deceased minor

    Plaintiffs,

                                          Civil Action No.  8:14-cv-03124-TDC

    v.

ROMARM, S.A.,
a state-owned and operated commercial
gun manufacturer and instrumentality of
the Government of Romania, a foreign
sovereign state, and under its day-to-day control

    Defendant.

**PLAINTIFFS' AMENDED COMPLAINT**
**PURSUANT TO FRCP RULE 15 (a)(2) and (c)**

Plaintiffs, Norman Williams and Diane Howe, as Legal Representatives of J.H., a deceased minor, and Kevin Attaway and Jamel Blakeley, hereby Amend their Complaint by Leave, pursuant to Fed. R. Civ. P., Rule 15 (a)(2) and (c).  The purpose of this Amendment to the Complaint is to cure any deficiencies by refining and clarifying the Allegations of Fact, and in particular those as to personal jurisdiction over Romarm, S.A., a state owned and operated commercial gun manufacturer and seller, which is an instrumentality of the Government of Romania, a foreign sovereign state, and under its day-to-day control.

The Complaint is to be Amended to delete causes of action under the District of Columbia Wrongful Death Act of 2012, and all public nuisance and negligence matters, and to be substantially re-worded. The causes of action to be pursued are the Assault Weapons Manufacturing Strict Liability Act ("SLA") in D.C. Code, Section 7-2501.01, et seq., and Common Law Emotional Distress Torts.

1

### Romarm is Not Immune from Liability under the PLCAA

1. Romarm is not immune from liability under the Protection of Lawful Commerce in Arms Act of 15 U.S.C. 7901, <u>et seq</u>.  It has never been shown that it is a Federally licensed gun manufacturer, seller, importer, or dealer.  Immunity from suit does not apply to those that are unlicensed.  <u>Ileto v. Glock, Inc</u>., 565 F.3d 1126 (9th Cir. 2009), cert. denied 130 S.Ct. 3326 (2010), the PLCAA pre-empts only actions brought against Federally licensed entities.

2. The Strict Liability Act ("SLA") in D.C. Code, Section 7-2551.02, states that:

"Any manufacturer, importer, or dealer of an assault weapon or machine gun shall be held strictly liable in tort, without regard to fault or proof of defect, for all direct and consequential damages that arise from bodily injury or death if the bodily injury or death proximately results from the discharge of the assault weapon or machine gun in the District of Columbia."

3. As alleged in the Allegations of Fact herein, at paragraphs 30-39, Romarm is a manufacturer, importer, seller, and dealer in assault weapons, and its assault weapon which killed J.H., and wounded Attaway and Blakeley, was discharged in the District of Columbia.

### There is Federal Jurisdiction under 28 U.S.C. 1330 and the FSIA

4. Federal subject-matter Jurisdiction is under 28 U.S.C. 1330, which provides that the District Court shall have Original Jurisdiction without regard to the amount in controversy of any non-jury civil action against a foreign state, as defined in the Foreign Sovereign Immunities Act ("FSIA") in 28 U.S.C. 1603 (a), in which the foreign state is not entitled to immunity under 28 U.S.C. 1605-1607, and where service has been made under 28 U.S.C. 1608.

5. Under 28 U.S.C. 1603 (a), a foreign state includes its agencies and instrumentalities, which is a separate legal person or corporation that is an organ of the foreign state and is owned by the foreign state.

6. Romarm has admitted in its previous filings that it is 100% owned and operated, and controlled, by the Government of Romania.  See, Allegations of Fact, at paragraph 30, herein.

7.  Under 28 U.S.C. 1605 (a)(1), a foreign state is not entitled to immunity where the foreign state has waived it.

8.  Under 28 U.S.C. 1605 (a)(2), a foreign state is not entitled to immunity based upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

9.  Romarm has admitted in its previous filings, and as alleged in the Allegations of Fact, at paragraphs 30-39, herein, that it manufactured the assault weapon that injured and killed J.H. and wounded Attaway and Blakeley, which was manufactured in Romania, in connection with its commercial activity of manufacturing and selling assault weapons in Romania and elsewhere, and that this act of manufacturing and selling elsewhere caused a direct effect in the United States under the Strict Liability Act for the injuries and the killing of J.H., and wounding Attaway and Blakeley.

10. These admissions and waivers by Romarm are not Collaterally Estopped by any previous rulings of the Courts that Romarm has no liability for its manufacturing and selling of assault weapons, in view of the issues of admissions and waiver by Romarm having never previously been litigated.

11. Under 28 U.S.C. 1608 (b)(1), service on an agency or instrumentality of a foreign state shall be made by delivery of a copy of the Summons and the Complaint in accordance with any special arrangement for service between the Plaintiff and the agency or instrumentality.

12. Service of the Summons and Complaint was made on Vasile Marius Crisan, the General Manager of Romarm, in September 2011 through the Hague Convention, in Case No. 2011 CA 002349 B before the D.C. Superior Court. Mr. Crisan then responded with a Letter to the Superior Court, dated October 25, 2001, where he argued the merits of Romarm's defenses. See, attached Exhibit 1.

13. Romarm, through its General Manager, Mr. Crisan, thereby waived any claim or defense that there was no personal jurisdiction over it, pursuant to 28 U.S.C. 1608 (b)(1), and pursuant to FRCP, Rule 4 (j), and FRCP, Rule 12 (b)(2), and Romarm moreover consented to service of process, pursuant to FRCP, Rule 12 (b)(5).

14.  Romarm then Removed the proceeding from the Superior Court to the District Court in the District of Columbia on November 1, 2011, in Case No. 1:11-cv-01924-ABJ.

15.  On April 2, 2012, the District Court approved the Voluntary Dismissal by the Plaintiffs, without prejudice, in Case No. 1:11-cv-01924-ABJ, pursuant to FRCP, Rule 41 (a)(1).

16.  On March 20, 2012, the Plaintiffs re-filed their Complaint in the District Court as Case No. 1:12-cv-00436-EGS, with the same substantive claims as in Case No. 1:11-cv-01924-ABJ.

17.  After the Dismissal of Case No. 1:12-cv-00436-EGS by the District of Court for lack of jurisdiction on August 18, 2014, it was timely re-filed by the Plaintiffs on September 2, 2014, under a savings statute in Maryland Rule 2-101 (b), in the Circuit Court for Prince Georges County as Civil Action No. CAL 14-24084, with the same substantive claims as in Case No. 1:12-cv-.00436-EGS.

18.  Romarm then Removed the proceeding on October 3, 2014, to the District Court in Maryland, where it became Case No. 8:14-cv-03124-TDC, with the same substantive claims as in Case No. CAL-14-24084.

19.  Thus, the case that is now before the District Court in Maryland is the same case with the same substantive claims as was initially filed before the Superior Court in the District of Columbia in 2011 in Case No. 2011 CA 002349 B, where Romarm, through its General Manager, Mr. Crisan, waived any claim or defense that there was no personal jurisdiction over it and consented to service of process.  See, attached Exhibit 1.

20.  These admissions and waivers by Romarm as to personal jurisdiction are not Collaterally Estopped by previous rulings in view of the issues of waiver having never been litigated in any Courts.

### Maryland is the proper Venue for this civil action against Romarm

21.  Under 28 U.S.C. 1391 (b)(3), if there is no District in which an action may otherwise be brought, it may be brought in any District in which any Defendant is subject to the District Court's personal jurisdiction.

22. As provided in 28 U.S.C. 1330 (b), personal jurisdiction over a foreign state shall exist as to every claim for relief over which the District Court has jurisdiction under 28 U.S.C. 1330 (a), where service has been made under 28 U.S.C. 1608 (b)(1).

23. The District Court in Maryland has personal Jurisdiction over Romarm because it has original jurisdiction over this case, pursuant to 28 U.S.C. 1330 (a), under the FSIA, and because there was proper service of process under the Hague Convention and under 28 U.S.C. 1608 (b)(1), on Romarm, as consented to by its General Manager, Mr. Crisan, where he acknowledged the service of the Summons and Complaint, and responded directly to the Court as to the merits of the case.  See, attached Exhibit 1.

### Maryland courts may hear cases under the substantive law of the District of Columbia

24. Under the Common Law principles of *Lex Loci Delicti*, the law of the place where the injury occurred is to be used in the forum court.  Under Maryland Code, Section 3-903 (a), where the wrongful act occurred in the District of Columbia, its substantive law shall be applied by the Maryland courts.  The substantive law to be applied is the Strict Liability Act of the District of Columbia and the Common Law as to the Torts of Emotional Distress.

### This Civil Action against Romarm is within the Statute of Limitations

25. This civil action against Romarm under the Strict Liability Act and the Common Law Torts of Emotional Distress falls within the residual 3-year statute of limitations for both the District of Columbia, under D.C. Code, Section 12-301 (8), and Maryland, under Md. Code, Section 5-101.  The statute of limitations for Maryland would apply under Md. Code, Section 3-903 (b).

26. The injuries and death to J.H. occurred on March 22, 2010, and this action was commenced on March 28, 2011, in the Superior Court of the District of Columbia in Case No. 2011 CA 002349 B.

27. This civil action by Williams as Legal Representative for J.H. against Romarm has been continuously litigated since March 28, 2011, and where it was saved from a lapse of the statute of limitations by Maryland Rule 2-101 (b), and where there was no dismissal with prejudice.

28. The Amendment of the Complaint to add the claims of Attaway and Blakeley "relates back," pursuant to FRCP, Rule 15 (c)(1)(B), to the date of the original Complaint on March 28, 2011, where the Amendment asserts claims that arose out of the same conduct, transactions, or occurrence, as set out in the original Complaint, which were in late March 2010.

29. This District Court ruled on July 20, 2015, that J.H., Attaway, and Blakely were in "privity" with J.H., in view of being shot in close proximity in time and place in late March 2010, by the same assault weapon manufactured by Romarm. Thus, there would be "relation back" as to the claims of Attaway and Blakely to the date of filing of the original Complaint on March 28, 2011, so as to fall within the residual 3-year statute of limitations.

### Allegations of Fact

30. Romarm is wholly owned and operated on a day-to-day basis, and controlled by the Government of Romania, as its agency or instrumentality. It engages in the commercial activity of manufacturing assault weapons and other firearms for sale and importation into the United States.

31. Romarm does not have and has never had a Federal License from the Attorney General of the United States, or from any Federal agency, to manufacture, import, sell, or distribute any type of firearms in the United States, or to be a dealer of such weapons in the United States.

32. Over the past ten years, Romarm has entered into at least seven Joint Venture, General Partnership and Principal/Agent agreements with Century Arms, Inc., ("Century") and its affiliates, to distribute and sell Romarm assault weapons and other firearms to warehousers and dealers located in Maryland and throughout the United States.

33. Under Romarm's agreements with Century and its affiliates, at least 1,000 assault weapons annually for over the past ten (10) years, and other firearms manufactured by Romarm, and imported into the United States, were placed in warehouses in Prince Georges County, and elsewhere in Maryland, under the protection of Maryland state law.

34. Romarm has received at least $1 Million in revenue from the sales of its weapons that have been stored in Maryland and distributed or sold by affiliated dealers in Maryland over that period.

35. An AK-47 assault weapon that was manufactured by Romarm and imported into the United States caused emotional distress, bodily injury, and death to J.H. on March 22, 2010, and caused serious bodily injury and emotional distress to Attaway and Blakeley on March 30, 2010.

36. But for the AK-47 assault weapon manufactured by Romarm and imported into the United States, J.H. would not have been shot and killed by that weapon on March 22, 2010.

37. The legal representatives of J.H. have incurred both the pain and suffering of emotional distress and economic damages caused by the death of their son from Romarm's AK-47 assault weapon, and have suffered at least $10 Million in compensatory damages.

38. But for the AK-47 assault weapon manufactured by Romarm and imported into the United States, Attaway and Blakely would not have suffered bodily and emotional distress injury caused by that weapon on March 30, 2010.

39. Attaway and Blakely have been bodily and emotionally injured by being shot by the Romarm AK-47assault weapon, and each has suffered at least $5 Million in bodily damages and emotional distress caused by the discharge of Romarm's assault weapon on March 30, 2010.

40. Romarm was served in Romania with the initial Summons and Complaint in this proceeding by Process of Service in September 2011. It was done under the requirements of the Hague Convention and the requirements of FRAP, Rule 4 (j), and 28 U.S.C. 1608 (b)(1). The service was on its General Manager, Mr. Crisan, in Romania. He responded with a Letter, dated October 25, 2011, to Judge Edelman in the D.C. Superior Court, where Mr. Crisan asserted claims and defenses on the merits on behalf of Romarm. See, attached Exhibit 1.

## Causes of Action

Paragraphs 1-40 are incorporated herein and it is alleged that Romarm as an agency or instrumentality of the Government of Romania violated the Strict Liability Act of D.C. Code, Section 7-2551.02, by its commercial activity of manufacturing and importing into the United States, and facilitating the distribution to dealers in Maryland of the AK-47 assault weapon that caused emotional distress, bodily injury, and death to J.H. and caused bodily injuries and emotional distress to Attaway and Blakeley. It is alleged that Romarm has been properly served under the Hague Convention and other applicable law with Service of Process of the Summons and initial Complaint, and that there is subject-matter and personal jurisdiction over it under the FSIA and other applicable law.

Compensatory monetary damages of at least $10 Million are Demanded by the Legal Representatives of J.H., and Compensatory monetary damages of at least $5 Million each are Demanded by Attaway and Blakeley, all under strict liability for Tort claims by each Plaintiff.

Reasonable attorney's fees and costs are Demanded, along with all other appropriate Relief under the law.

This the 17th day of August 2015.

Respectfully submitted,

/s/
Daniel Wemhoff, Esq., Bar No. 09215
4600 S. Four Mile Run, Suite 831
Arlington, VA 22204
(703) 589-2199

## Certificate of Service

I hereby certify that I have served a copy of the above Amended Complaint to Romarm's attorneys, at the law firm of Pisciotti and Malsch, and its local attorney, John Parker Sweeney, by ECF filing on the 17th of August, 2015.

_____/s/_____
Daniel Wemhoff, Esq.,
Bar No. 09215