# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

NORMAN WILLIAMS,
DIANE HOWE,
KEVIN ATTAWAY and
JAMEL BLAKELEY,

     Plaintiffs,

     v.

ROMARM, S.A.,

     Defendant.

Civil Action No. TDC-14-3124

## MEMORANDUM ORDER

On July 20, 2015, the Court granted a Motion to Dismiss, filed by Defendant Romarm, S.A. ("Romarm"), based on its finding that the Court lacked personal jurisdiction over Romarm. On March 15, 2016, with leave of the Court, Plaintiffs Norman Williams ("Williams"), Diane Howe ("Howe"), Kevin Attaway ("Attaway"), and Jamel Blakely ("Blakely") (collectively, "Plaintiffs") filed an Amended Complaint. ECF No. 56. Pending before the Court is Romarm's Motion to Dismiss Plaintiffs' Amended Complaint. ECF No. 57. Because Plaintiffs have failed to cure the jurisdictional defects necessitating dismissal of the original Complaint, Defendants' Motion to Dismiss is GRANTED.

## BACKGROUND

The factual background and procedural history of this case up to the granting of Romarm's first Motion to Dismiss are set forth in the Court's opinion on that motion and so will be only summarized here. *See Williams v. Romarm, S.A.*, 116 F. Supp. 3d 631, 634-35 (D. Md. 2015). Plaintiffs, who are citizens of Maryland and the District of Columbia, filed suit on

September 2, 2014 against Romarm because a firearm manufactured by Romarm was allegedly used in two shootings that occurred in Washington, D.C. in 2010. The first shooting, on March 22, 2010, resulted in the death of the son of Williams and Howe; the second, on March 30, 2010, resulted in injury to Attaway and Blakeley. Plaintiffs alleged a violation of the District of Columbia Assault Weapons Manufacturing Strict Liability Act, D.C. Code §§ 7-2551.01 to 7-2551.03 (2013), and common law claims for wrongful death, negligence, and nuisance.

On July 20, 2015, the Court granted Romarm's first Motion to Dismiss on the grounds that the Court lacked personal jurisdiction over Romarm, a company wholly owned by the Romanian government that engages in the international marketing and sale of firearms. In so ruling, the Court first concluded that, based on a prior ruling by the United States District Court for the District of Columbia in a predecessor case, the doctrine of collateral estoppel required the Court to adopt the finding that Romarm is a sufficiently independent entity from the Romanian government such that due process requires that Romarm have "minimum contacts" with Maryland in order to establish personal jurisdiction. *See Williams*, 116 F. Supp. 3d at 636-37.

The Court then considered the jurisdictional facts alleged in the Complaint. Plaintiffs alleged that Romarm sells firearms to a United States distributor, Century Arms International, Inc. ("Century"), pursuant to a loyalty agreement and contract, "for distribution to its dealers inside the United States, including Maryland," such that its sales have a "direct effect" in the United States. Compl. ¶¶ 3-4, 8-9, ECF No. 2. Plaintiffs also asserted that the weapon used to kill J.H. and injure Attaway and Blakeley was manufactured by Romarm and was the subject of a "sale and purchase" in Maryland before it "was transported from Maryland to the District of Columbia" and used in the shootings. *Id.* ¶¶ 4, 11. The Court also analyzed documents submitted after the hearing on the motion, including printouts from the websites of two

2

Maryland-based firearms dealers, Atlantic Firearms LLC and Atlantic Guns, each advertising a Romarm firearm for sale. *See Williams*, 116 F. Supp. 3d at 641 n.6. The Court determined that, while "there can be no doubt . . . that Romarm has purposefully availed itself of the United States market," under controlling precedent from the United States Supreme Court and the United States Court of Appeals for the Fourth Circuit, it was not sufficient to show merely that Romarm had targeted the United States generally or that a Romarm weapon had at some point made its way to Maryland; rather, a showing that Romarm made a "specific effort" to sell firearms in Maryland was required. *See id.* at 641-42. Because Plaintiffs "had not even shown that the firearm in question was sold in Maryland, much less that there is a regular course of sales of Romarm firearms in Maryland from which such purposeful conduct could be inferred," the Court granted the motion to dismiss for lack of personal jurisdiction. *Id.* at 642.

Plaintiffs then requested leave to amend their Complaint. In its Order granting leave to amend, the Court instructed Plaintiffs that the Amended Complaint should fully address the due process element of personal jurisdiction and "stat[e] with specificity all known facts relating to Romarm's contacts with Maryland." *See* Order at 4-5, ECF No. 55.

## DISCUSSION

### I.    Personal Jurisdiction

Romarm seeks dismissal of the Amended Complaint on a number of grounds, including under Federal Rule of Civil Procedure 12(b)(2) based on a lack of personal jurisdiction. At the pleading stage, the plaintiff must make a prima facie showing that the defendant is properly subject to the court's jurisdiction. *See Mylan Labs, Inc. v. Akzo, N.V.*, 2 F.3d 56, 59-60 (4th Cir. 1993). For purposes of resolving the Motion, the Court takes the facts set forth in the Amended Complaint as true and draws all reasonable inferences in the Plaintiffs' favor. *See id.* at 60. The

Court, however, is also permitted to consider evidence outside the pleadings in resolving a motion under Rule 12(b)(2). *See Structural Pres. Sys., LLC v. Andrews*, 931 F. Supp. 2d 667, 671 (D. Md. 2013).

The Amended Complaint asserts that Romarm exports a substantial volume of firearms to the United States through its exclusive distributor, Century, with whom Romarm allegedly maintains a loyalty agreement "to ensure that Romarm products are promoted and marketed properly." Am. Compl. ¶¶ 14-15, ECF No. 56. This loyalty agreement, according to Plaintiffs, "exemplifies the direct intent of Romarm to serve the entire U.S. market, including Maryland." *Id.* ¶ 15. Century purchases "on average, a minimum of $1.35 million per quarter" in firearms from Romarm and distributes them to federal firearms licensed gun dealers ("FFLs") for resale throughout the United States. *Id.* ¶ 14. Romarm also "manufactures and designs its weapons so that they can be modified by Century to comply with the firearm laws of the United States, and in turn its state-wide FFL dealers, including those in Maryland." *Id.* ¶ 11. Romarm "relies on Maryland law enforcement, including its state and county police, to secure their dealer warehouses from criminal activity" and trace stolen weapons. *Id.* ¶ 16. Plaintiffs have also attached as an exhibit an incomplete printout from Atlantic Firearms LLC advertising a Romarm WASR-10 rifle, the same type of gun allegedly used in the shootings in this case.

With respect to the weapon used in the March 2010 shootings, Plaintiffs attach to the Amended Complaint a record indicating that the firearm was sold on March 29, 2007 by Maryland Small Arms Range, Inc., a Maryland FFL. The Amended Complaint states that the weapon was sold by Century directly to Maryland Small Arms Range, Inc. However, Romarm has attached to its Motion records showing that the firearm was shipped from Romania to Century's Vermont location on November 22, 2006, and that Century then sold it on December

4

1, 2006 to an FFL located in Dayton, Ohio. Plaintiffs concede in their Opposition that the firearm was not, in fact, sold from Century directly to a Maryland FFL, but nevertheless assert that an "interlocking network" operates among FFLs in the United States that benefits Romarm. *See* Pl.'s Opp'n Mot. Dismiss at 10-11, ECF No. 58.

The substance of the vast majority of these allegations was before the Court on the first Motion to Dismiss. The Amended Complaint adds the following new jurisdictional facts: (1) Romarm partners with Century to adapt its weapons to the requirements of the United States market and sell them nationwide, generating substantial revenue; (2) because of the presence of numerous FFLs in Maryland, there must be a significant volume of Romarm firearms transported into and sold in Maryland, requiring Romarm to rely on support from Maryland law enforcement; and (3) in 2007, the firearm later used in the shootings was received by a Maryland FFL and then sold, though neither Romarm nor Century sold it directly into Maryland. These new allegations fall short of fulfilling due process requirements and constrain the Court to again conclude that it cannot exercise personal jurisdiction over Romarm.

In its prior Memorandum Opinion, the Court reviewed in detail the requirements for establishing personal jurisdiction articulated by the Supreme Court and the Fourth Circuit. *See Williams*, 116 F. Supp. 3d at 638-642. In summary, where, as here, the plaintiff does not allege that the defendant maintains continuous and systematic contacts with the forum state, the plaintiff must instead show that the defendant has sufficient "minimum contacts" with the forum state such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co v. Washington*, 326 U.S. 310, 316 (1945). In the Fourth Circuit, the test for personal jurisdiction is whether (1) the defendant has "created a substantial connection to the forum state by action purposefully directed toward the forum state"; and (2) the

exercise of jurisdiction would not offend "traditional notions of fair play and substantial justice." *Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 945-46 (4th Cir. 1994). In this case, Plaintiffs must satisfy the "minimum contacts" requirement by demonstrating that Romarm maintains a "regular course of sales" into Maryland or by establishing the presence of other facts, "such as 'special state-related design, advertising, advice, marketing or anything else' that would indicate a 'specific effort' by the defendant to sell in [Maryland]." *Williams*, 116 F. Supp. 3d at 640 (citing *J. McIntyre Mach. Ltd. v. Nicastro*, 564 U.S. 873, 889 (2011) (Breyer, J., concurring)).

The Court has already held that it is insufficient to show that the defendant purposefully availed itself of the United States as a whole. *Id.* at 642. The newly-added allegations continue to focus on Romarm's purposeful availment of the United States market overall, not any "specific effort" to sell its firearms in Maryland, such as through "a regular course of sales" in Maryland, or "state-specific design, advertising, or marketing." *See Williams*, 116 F. Supp. 3d at 641-42. Though Plaintiffs allege that Romarm uses an exclusive U.S. distributor, and even modifies its weapons to comply with federal regulations, these efforts are not specifically directed towards Maryland. Nor does the high volume of Romarm sales nationwide reflect any specific effort to target the Maryland market. Plaintiffs contend that "[i]f extrapolated evenly to all 50 states, including Maryland, sales volume averages over $1 million annually." Am. Compl ¶ 14. But Plaintiffs have given the Court no reason to believe Romarm's sales are evenly distributed across the United States, and the Court will not engage in such unjustified speculation. Nor will the Court infer, as Plaintiffs urge, that merely because 691 FFLs operate in Maryland, they necessarily sell any significant volume of Romarm firearms *See Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011) (stating that the court "need

6

not accept as true unwarranted inferences" or "unreasonable conclusions"). For the same reason, Plaintiffs' unsupported assertion that Romarm "relies on Maryland law enforcement . . . to secure their dealer warehouses from criminal activity" falls flat. *See* Am. Compl. ¶ 15. Plaintiff has offered no facts to support the inference that there are dealer warehouses in Maryland filled with Romarm firearms. As discussed in the Court's earlier opinion, the single advertisement for a firearm available for sale over the internet through a Maryland FFL does not establish a "regular course of sales," particularly where there is no evidence on whether the Maryland FFL has actually received the firearm in Maryland, or whether it received the firearm directly from Romarm or Century. *See Williams*, 116 F. Supp. 3d at 641 n.6.

Plaintiffs' evidence relating to the specific firearm used in the shootings does not bridge the gap. Although the firearm appears to have been received and sold by a Maryland FFL prior to the shootings, the evidence establishes that it was sold to the Maryland dealer not by Romarm or Century, but by an independent FFL in Ohio. Thus, the mere presence of the firearm in Maryland cannot be deemed to part of a "regular course of sales" into Maryland by Romarm. *See J. McIntyre*, 564 U.S. at 888-89 (Breyer, J., concurring) ("[A] single sale of a product in a State does not constitute an adequate basis for asserting jurisdiction over an out-of-state defendant, even if that defendant places his goods in the stream of commerce, fully aware (and hoping) that such a sale will take place."). Moreover, exercising jurisdiction over Romarm based on the transfer of the firearm from a third party into Maryland would impermissibly risk subjecting Romarm to judgment "based on the activity of third persons and not the deliberate conduct of the defendant." *Lesnick*, 35 F.3d at 945.

Accordingly, the Court finds that the Amended Complaint still fails to establish personal jurisdiction. Because Plaintiffs' allegations in the Amended Complaint do not materially

advance their showing in support of personal jurisdiction since the first Motion to Dismiss, the Court finds no basis to alter its prior determination that there has been an insufficient showing to warrant jurisdictional discovery. *See Williams*, 116 F. Supp. 3d at 642-43.

Because the Court concludes that it cannot exercise personal jurisdiction over Romarm, the Court need not consider the additional arguments set forth in the Motion to Dismiss. The Amended Complaint is dismissed under Rule 12(b)(2) for lack of personal jurisdiction.

## II.    Transfer

Plaintiffs previously requested that the Court transfer this case to the District of Vermont, the state in which Century's principal place of business is located. A district court may "in the interest of justice," transfer a case "to any other district or division where it might have been brought." 28 U.S.C. § 1406(a) (2012). Section 1406 "authorize[s] broad remedial relief where there are impediments to an adjudication on the merits," including a lack of personal jurisdiction. *Porter v. Groat*, 840 F.2d 255, 257-58 (4th Cir. 1988).

Accordingly, the Court will grant Plaintiffs **14 days** from the date of this Order to file a Motion to Transfer should they still wish to transfer this action to the District of Vermont or any other district where the action "could have been brought." *See O'Neal v. Hicks Brokerage Co.*, 537 F.2d 1266, 1268 (4th Cir. 1976) (affirming dismissal for lack of personal jurisdiction but remanding to "afford the appellants an opportunity to move for transfer of the case to a district where it could have been brought"). In any such Motion, Plaintiffs must set forth with particularity a factual basis upon which the Court may find that this action "could have been brought" in Vermont (or any other proposed transferee district), legal analysis to support the conclusion that the transferee court could exercise personal jurisdiction over Romarm, and a basis to conclude that such transfer would be in the "interest of justice." 28 U.S.C. § 1406(a).

**CONCLUSION**

For the foregoing reasons, it is hereby ORDERED that Romarm's Motion to Dismiss, ECF No. 57, is GRANTED.  Plaintiffs are granted **14 days** from the date of the accompanying Order to file a Motion to Transfer.  Failure to file a Motion to Transfer will result in the dismissal of the case with prejudice.

Date:  September 30, 2016

THEODORE D. CHUANG
United States District Judge

9